UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS                                      NO: 21-19

DERRICK ESTES                               SECTION: "A" (2)

## ORDER AND REASONS

Before the Court is a **Motion to Vacate Pursuant to 28 U.S.C. § 2255 (R. Doc. 138)**[1] filed by Defendant Derrick Estes. The United States of America ("the Government") opposes the motion **(R. Doc. 144).** Having considered the *pro se* motion, the opposition, Estes's reply, the record, and the applicable law, the Court finds that the Defendant's **Motion to Vacate Pursuant to 28 U.S.C. § 2255 (R. Doc. 138)** is **DENIED** for the reasons set forth below.

## I.    Background

On July 11, 2023, the Court sentenced Estes to a total term of 360 months after a jury found him guilty of: possession with intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); possession of a firearm after a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and possession with intent to distribute 40 grams or more of fentanyl and a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), and (b)(1)(C).[2] The United States Fifth Circuit Court of Appeals affirmed Derrick Estes's conviction and sentence on September 5, 2024. *United States of America v. Derrick Estes*, No. 23-30488, 2024 WL 4057576 (5th Cir. Sep. 5, 2024). Estes did not file a writ of certiorari with the Supreme Court, so his conviction became final after the Fifth Circuit affirmed it.

---

[1] On October 17, 2022, Estes filed his first motion to vacate his sentence under 28 U.S.C. § 2255. Rec. Doc. 90. The clerk's office marked the motion as deficient. Rec. Doc. 91.
[2] R. Doc. 87, Jury Verdict Form.

Estes now brings the instant timely *pro se* motion to vacate his sentence, alleging four claims of ineffective assistance of counsel.[3] First, Estes claims that his attorney incorrectly informed him that he could not plead guilty to only one of the four counts with which he was charged and still proceed to trial on the other three counts. Second, Estes claims that his counsel failed to call witnesses who were present for his shooting and arrest. Third, Estes claims that his counsel failed to obtain his brother's medical records. Finally, Estes claims his counsel failed to notify him that he was entitled to reimbursement of legal fees because his counsel was under investigation and cooperating in a federal income tax investigation.[4]

## II.    Legal Standard

### A.  Motions to Vacate Pursuant to 28 U.S.C. § 2255

Section 2255 "provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial court." *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004) (quoting *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir. 1970)). The statute establishes that a prisoner in custody under a federal court sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." *Id.* (quoting 28 U.S.C. § 2255). Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.*

Relief under 28 U.S.C. § 2255 is reserved for violations of constitutional rights and for a narrow range of injuries in federal criminal cases that could not have been raised on direct appeal

---

[3] R. Doc. 138, Mot. to Vacate.
[4] *Id.*

and would result in a fundamental miscarriage of justice. *United States v. Petrus*, 44 F.3d 1004 (5th Cir. 1994) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

A district court may deny a § 2255 motion without conducting an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Arguellas*, 78 Fed. Appx. 984, 986 (5th Cir. 2003) (quoting 28 U.S.C. § 2255; *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992)). No hearing is necessary if the issues raised have been previously decided on direct appeal, contain no constitutional violation, or lack support in the record. *United States v. McCollom*, 664 F.2d 56, 59 (5th Cir. 1981) (citing *Buckelew v. United States*, 575 F.2d 515 (5th Cir. 1978)).

B.  Ineffective Assistance of Counsel

The Supreme Court's standard established in *Strickland v. Washington* governs ineffective-assistance-of-counsel claims. 466 U.S. 668 (1984). Strickland provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Rice v. United States*, No. 09-CR-107, 2015 WL 4911667, at *3 (E.D. Tex. Aug. 17, 2015) (citing *Strickland*, 466 U.S. at 687). Under the first prong, the petitioner must show that counsel's performance was deficient. *Id.* To establish deficient performance, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.*

Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* To satisfy the prejudice prong, the petitioner "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The Fifth Circuit "consider[s] such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances." *United States v. Seglar*, 37 F.3d 1131, 1136 (5th Cir. 1994).

An ineffective-assistance-of-counsel claim fails if the petitioner cannot satisfy either the deficient performance or the prejudice prong; a court need not evaluate both if the petitioner makes an insufficient showing under either. *Rice*, 2015 WL 4911667, at *3 (citing *Strickland*, 466 U.S. at 697).

## III.   Discussion

In his motion, Estes contends that his sentence should be vacated because of the ineffective assistance of counsel he received during plea negotiations, at his trial, and regarding reimbursement of attorney's fees following the trial.

Here, Estes presents four claims that his counsel's assistance was ineffective because his counsel failed to: (1) inform Estes that he could plead guilty to only one count and still proceed to trial on the other counts; (2) call witnesses that would have shown that his brother was responsible for the drugs, not Estes; (3) subpoena his brother's medical records which would have contradicted the Government's allegations; and (4) notify Estes that he could be reimbursed the majority of money that his counsel had been paid to represent him; and that an actual conflict arose when his counsel cooperated with the government in his counsel's own criminal case.[5] The Court will now address each of Estes's four contentions in order.

---

[5] R. Doc. 138-1.

A. Ineffective Assistance of Counsel During Pretrial

The Fifth Circuit has recognized that providing counsel to assist a defendant in deciding whether to plead guilty is one of the most precious applications of the Sixth Amendment. "[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *United States v. Rivas-Lopez*, 678 F.3d 353, 356-59 (5th Cir. 2012). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. *Id*. Here, Estes was not offered a plea agreement.[6] In any event, his ineffective-assistance-of-counsel claim rests on the fact that his defense counsel "notified Movant that he could not plead guilty to one count and proceed to trial on the others, because this Honorable Judge would not permit that to happen."[7] For the reasons laid out by the Government, the Court finds that this allegation, if true, does not meet the rigorous standard for relief under 28 U.S.C. § 2255.

First, Estes's defense counsel did not mislead him—the Court could refuse to accept a defendant's acceptance of responsibility to some of the counts. Fed. R. Crim. P. 11 (c)(3). Second, Estes has not established prejudice under prong two of the *Strickland* test. The Court is swayed by the Government's argument that "if Estes had pleaded guilty to the firearm charge, it would have provided more evidence he also possessed the drugs." The guns and drugs were found on the same day, in the same location, and during the execution of the same warrant.[8] If Estes informed the jury that he possessed the gun, it would have supplied additional evidence against him that he also possessed the drugs found at the scene.[9]

---

[6] R. Doc. 144-2, Transcript of Frye Hearing, at 8.
[7] R. Doc. 138-1 at 16.
[8] R. Doc. 144, Gov.'s Response to Def.'s Pet. for Post Conviction Relief, at 7.
[9] *Id.*

Additionally, Estes has not demonstrated that he would have received a less severe sentence if he had pleaded guilty to the felon-in-possession charge. *See Glover v. United States*, 531 U.S. 198, 203-04 (2001) (stating that prejudice can be established by showing a different term of imprisonment). Estes was sentenced to 120 months for felon in possession (Count 3), 240 months for possession with intent to distribute cocaine and fentanyl (Count 1), 300 months for possession with intent to distribute cocaine and fentanyl (Count 4), and 60 months for possession of a firearm in furtherance of a drug trafficking crime (Count 2).[10] The terms for Counts 1, 3 and 4 were to be served concurrently. The five year term for Count 2 was consecutive to the terms imposed for Counts 1, 3 and 4.[11] The 120-month sentence for Count 3 is the statutory maximum and was far less than what he received for Counts 1 and 4.[12] Given the totality of the sentence, a lower sentence on the single count of felon in possession would not have impacted the total sentence.

B. <u>Ineffective Assistance of Counsel During Trial</u>

Throughout his motion, Estes argues that the only crime he committed was being a felon in possession of a firearm, and that his brother was the one in possession of the drugs.[13] Estes then argues that his trial counsel failed to subpoena his brother's medical records and failed to call his sister and daughter as witnesses. Estes contends that the witnesses' testimonies and the medical records would have rebutted the evidence shown to the jury that Estes was in possession of the drugs.

The Court is not swayed by these arguments because nothing in Estes's motion demonstrates a reasonable probability that the outcome of the trial would have been different, but

---

[10] *Id.*; R. Doc. 119, Crim. Judgment.
[11] R. Doc. 119 at 2.
[12] R. Doc. 144 at 7.
[13] *See generally id.*

for the failure of counsel to call these potential witnesses. Predictions of an uncalled witness' testimony are largely speculative, and the choice of witnesses is a matter of trial strategy. *McCoy v. Cabana*, 794 F.2d 177, 183 (5th Cir. 1986); *see also United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983) ("complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have testified are largely speculative"). "To prevail on an ineffective assistance claim based upon uncalled witnesses, an applicant must name the witness, demonstrate that the witness would have testified, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable." *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010).

Here, Estes provides statements from both his sister and daughter which set out the content of their proposed testimonies and he demonstrates that they would have testified.[14] However, Estes has not overcome the strong presumption that failing to call a witness is considered trial strategy, nor that the failure to call these witnesses resulted in prejudice. *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("There is a 'strong presumption that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect.'")

The affidavit from Estes's sister claims that she would have testified that: "Once my Brother Joe saw the Officer go back to her car, my Brother Joe Estes went under his pillow and pulled out 5 clear bags and called out to my Aunt Beryl, so that she could help him hide everything in the back of the house."[15] Additionally, Estes's daughter claims that she filmed her father's arrest, and that Estes did not have the keys to the vehicle in which the drugs were found because Estes's brother had been driving the vehicle that day.[16]

---

[14] R. Doc. 138-2 at 1-2.
[15] *Id.* at 1.
[16] *Id.* at 2.

After comparing the witness statements to the record, the Court agrees with the Government that the proposed testimony does not withstand the evidence presented at trial. The record reflects that "on January 17, 2021, Estes was shot five times in the arm and back while sitting in a vehicle; that Estes and his aunt looked through the vehicle multiple times; that Estes's aunt removed a bag and an assault rifle from the vehicle; that the police found two pistols, an AK-47 rifle, and a bag containing cocaine, fentanyl, a pill bottle, and a digital scale in the same general area in a crawl space underneath Estes's aunt's residence; and that the items found underneath Estes's aunt's residence were in direct proximity to a pool of blood splatter. Moreover, testimony was offered that on February 1, 2021, police officers observed Estes driving to his residence in a yellow Fiat; that Estes was the sole occupant of the vehicle; and that upon searching the vehicle, the police discovered cocaine and more than 40 grams of fentanyl." *Estes*, 2024 WL 4057576, at *1.

Even if, as Estes's daughter states, it was solely Estes's aunt who moved the drugs, he still does not explain why there was a trail of Estes's blood leading from the vehicle to the location where the evidence was found (i.e., the gun and drugs).[17] Further, the only evidence Estes's daughter submits to show that Estes's brother drove the vehicle on the day of Estes's arrest is the fact that Estes's brother had the keys to the vehicle.[18] However, law enforcement officers testified that they saw Estes arrive in the disputed vehicle, and that he spent a considerable amount of time inside the house (where his brother resided) before he exited and was arrested.[19] As the Government points out, it is entirely plausible that Estes left the keys in the house, which is why they were not found on his person during his arrest. Because constructive possession only requires

---

[17] R. Doc. 130, Transcript of Jury Trial Day 2, at 25
[18] R. Doc. 138-2 at 2.
[19] R. Doc. 130 at 9-10.

"some evidence supporting at least a plausible inference that the defendant had knowledge of and access to the illegal item," nothing in the proposed testimony of either Estes's sister or daughter conflicts with the jury's findings that Estes possessed the gun and drugs. *See Estes*, 2024 WL 4057576, at *1. Further, Estes admits that he possessed the gun, which was found at the same time and in the same general area as the drugs.

Even if the Court were to assume the veracity of the witnesses' statements, trial counsel is uniquely qualified to assess the desirability of having a witness testify at trial. *Cotton v. Cockrell*, 343 F.4d 746, 752 (5th Cir. 2003). Estes's trial lawyer did not neglect to raise the issue of who was in possession of the gun and drugs. Rather, at closing, Estes's lawyer noted that the Government's video evidence only shows Estes's aunt moving the evidence. And he attempted to raise doubt about whether Estes was driving the vehicle in question on the day of his arrest.[20] Accordingly, there is no reasonable probability that the jury would have decided differently had the witnesses been called to the stand to testify to the same facts that trial counsel already presented.

As for the failure to subpoena his brother's medical records, Estes admitted that not addressing his brother's medical condition was a strategic decision made by his lawyer.[21] Estes's lawyer stated the theory would not present well to the jury because his brother was dead.[22] During a trial, defense counsel is "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Cruz-Garcia v. Guerrero*, 128 F.4th 665, 676 (5th Cir. 2025) (quotations omitted). The Fifth Circuit has held that so long as counsel conducted an adequate investigation, any strategic decisions made as a result of

---

[20] *Id.* at 178 & 182-83.
[21] R. Doc. 138-1 at 22.
[22] *Id.*

that investigation fall within the wide range of objectively reasonable professional assistance. *Cotton*, 343 F.4d at 752.

C.  Ineffective Assistance of Counsel After Trial

Estes's final claim of ineffective assistance of counsel comes from his assertion that his trial counsel "violated movant's sixth amendment by failing to notify him that he could request that he be reimbursed the majority of the money that he had gotten paid to represent him, after counsel had been investigated, charged and had obtained a negotiated plea for a single year in exchange for truthful testimony and cooperation in a federal criminal trial."[23] Estes argues that he would have used the funds from the reimbursement to hire a different lawyer.[24] However, at the attorney disclosure hearing, the Court specifically asked Estes if he was "satisfied with the representation that Mr. Hjortsberg has given you up until this time," Estes replied "yes sir."[25] At no point did Estes indicate that he wished to hire, or to be appointed new counsel. Further, as the Government points out, it is not even clear that Estes would be entitled to reimbursement, since his counsel had done a substantial amount of work before the trial.[26]

Estes next shifts to arguing that his lawyer had an actual conflict because he agreed to cooperate with the Government and testify as a co-defendant in his own case.[27] An actual conflict may exist, and the Constitution is implicated when an attorney is placed or places himself or herself in a situation "inherently conducive to divided loyalties." *Perillo v. Johnson*, 205 F.3d 775, 801

---

[23] R. Doc. 138-1 at 25.
[24] *Id.* at 29.
[25] R. Doc. 144-2, Transcript of Fyre Hearing, at 6.
[26] "Defense counsel enrolled in the case on April 8, 2021. He participated in numerous status conferences. (Rec. Docs. 24, 25, 26, 27, 28, 33, 39, 46, 48, 55, 73, 76). Counsel further filed a response to [the] government's notice to introduce evidence. (Rec. Doc. 45). He then represented Estes at an evidentiary hearing. (Rec. Doc. 55). Finally, counsel also represented him in magistrate court. (Rec. Doc. 72)." R. Doc. 144 at 12 n. 2.
[27] R. Doc. 138-1 at 26.

(5th Cir. 2000) (quoting *United States v. Castillo*, 179 F.3d 321, 326 (5th Cir.1999), *cert. granted*, 528 U.S. 1109 (2000)) (internal quotations omitted). To prevail on his ineffective assistance of counsel claim, Estes must show that his trial attorney was acting under the influence of an actual conflict of interest that *adversely affected his performance* at trial. *United States v. Infante*, 404 F.3d 376, 390-91 (5th Cir. 2005). If a defendant chooses to proceed with representation by counsel who has a conflict of interest, the Court must conduct a hearing to ensure a valid waiver by the defendant of his Sixth Amendment right. *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006). During the hearing, the district court must "ensure that the defendant (1) is aware that a conflict of interest exists; (2) realizes the potential hazards to his defense by continuing with such counsel under the onus of a conflict; and (3) is aware of his right to obtain other counsel." *Id.* (quoting *United States v. Grieg*, 967 F.2d 1018, 1022 (5th Cir. 1992) (internal quotations omitted).

Again, the Court agrees with the Government that no conflict analysis is needed because it held a hearing, at which Estes waived any potential conflict. The Court asked Estes several times, "do you wish to waive any conflict that Mr. Hjortsberg might have in representing you?"[28] Estes answered in the affirmative each time. At the hearing, Estes's counsel described his legal situation and stated on the record, in front of his client, that he had signed a plea agreement in his own criminal case and that he planned to cooperate with the government.[29] Further, the Court went so far as to have the Chief Public Defender counsel Estes at the hearing and explain to him that if he could not afford a lawyer, one would be provided to him.[30] Estes was also allowed to ask the Court and outside counsel questions. Estes confirmed to the Court that he fully understood his rights, and that he chose to waive any potential conflict.[31]

---

[28] R. Doc. 144-2 at 6, 7, & 8.
[29] *Id.* at 3.
[30] *Id.* at 4.
[31] *Id.* at 3-10.

Even if an actual conflict of interest existed, and Estes's conflict waiver is found to be deficient, he still did not establish that his trial counsel's conflict adversely affected his performance at trial.[32] Estes has not shown anything beyond conclusory statements to suggest that his lawyer's possible conflict resulted in deficient performance. *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). As other circuit courts have held, the fact alone that Estes's defense attorney was under investigation and cooperating with the Government at the time of the trial is not enough to show deficient performance. *See United States v. Salerno*, 868 F.2d 524, 541 (2nd Cir. 1989) (No Sixth Amendment violation when defense attorney was cooperating with the Government in other unrelated federal investigation into his law firm); *United States v. Michaud*, 925 F.2d 37, 41-42 (1st Cir. 1991) (concluding that an attorney teaching classes to IRS auditors on the subject of potential signs of criminal activity during the course of his representation is not enough to establish a conflict of interest); *cf. United States v. McLain*, 823 F.2d 1457, 1463 (11th Cir. 1987) (Sixth Amendment violation found when defense attorney was found to have intentionally prolonged the trial and deficiently performed during plea negotiations to delay his personal indictment).

Because Estes's § 2255 motion and the record in this case conclusively show that he is not entitled to relief, the Court denies this § 2255 motion without the need to conduct an evidentiary hearing.

---

[32] Defense counsel made several objections throughout the direct examination of the lead investigator. Defense counsel conducted an in-depth cross-examination of the lead investigator and presented several alternative theories, such as access that others may have had to the backyard where the evidence was found. During the examinations of other witnesses, he remained attentive and continued to object. Defense counsel had well-thought-out cross-examinations of witnesses, all of which related to his theory of defense. R. Doc. 144 at 14.

Accordingly;

**IT IS ORDERED** that the **Motion to Vacate Pursuant to 28 U.S.C. § 2255** (**R. Doc. 138**) filed by Defendant Derrick Estes is **DENIED**. Further, the Court denies Estes's request to conduct an evidentiary hearing in connection with this motion.

July 6, 2026

JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE